**CITY OF JOLIET, an Illinois Municipal Corporation, Plaintiff,**

v.

**MID–CITY NATIONAL BANK OF CHICAGO, et al., Defendants.**

**No. 05 CV 6746.**

United States District Court, N.D. Illinois, Eastern Division.

Jan. 24, 2014.

Carl A. Gigante, James R. Figliulo, Peter A. Silverman, Bruce W. Doughty, Melissa Nicole Eubanks, Michael Thomas Graham, Stephanie D. Jones, Thomas Daniel Warman, Figliulo & Silverman, Chicago, IL, Stephen Andrew Viz, Financial Guaranty Insurance Company, New York, NY, for Plaintiff.

James D. Benak, James D. Benak Attorney LLC, Theodore Robert Tetzlaff, Tetzlaff Law Offices, LLC, Matthew Lawrence Iodice, Matthew Iodice, Chicago, IL for Defendants.

### ORDER

CHARLES RONALD NORGLE, District Judge.

Motion to Withdraw [857] is granted.

### STATEMENT

Before the Court is Dean J. Polales, John T. Ruskusky, F. Thomas Hecht, Susan G. Feibus, Floyd D. Perkins, Claudette P. Miller, J. Timothy Ramsey, Kristopher

J. Stark, Seth A. Horvath, Kelly M. Keefe, and all attorneys associated with Ungaretti & Harris LLP's (collectively, "U & H" or the "U & H attorneys") motion to withdraw from the representation of Defendants New West, L.P., New Bluff, L.P., *et al.* ("New West/New Bluff" or the "New West/New Bluff Defendants").[1] For the following reasons, the motion is granted.

The instant eminent domain and Fair Housing Act, 42 U.S.C. § 3601 *et seq.*, action began in 2005. Extensive pretrial litigation ensued over the following seven years, including appeals to the Seventh Circuit and a petition for writ of certiorari before the United States Supreme Court. The case proceeded to bench trial on September 27, 2012—a trial which has continued for over a year and has resulted, thus far, in an excess of 15,000 pages of transcripts.

On November 12, 2013, Defendant United States Department of Housing and Urban Development ("HUD") was dismissed following a settlement agreement between it and Plaintiff City of Joliet ("Joliet"). The remaining parties completed the presentation of evidence in the trial on December 20, 2013. On January 10, 2014, Joliet entered into a settlement agreement with Defendants Teresa Davis, Elvis Foster, Arnetris Renee Griffin, and Alfreda Eubanks, resulting in their dismissal. The New West/New Bluff Defendants are now the only defendants in this case.

At present, the trial is proceeding to the parties' submission of their proposed findings of fact and conclusions of law and closing arguments. Initially, the proposed findings of fact and conclusions of law were due on or before February 28, 2014, with replies due on or before March 14, 2014. In light of the instant motion, however, the Court has extended those dates to March 14, 2014 and March 28, 2014, respectively.

The U & H attorneys have represented New West/New Bluff in this matter from 2005 to date.[2] On December 31, 2013, U & H filed the instant motion to withdraw, stating that a significant amount of attorney's fees remains unpaid, including fees for all of U & H's trial work and for various pretrial work. U & H alleges, and the New West/New Bluff Defendants do not contest, that the amount of unpaid legal fees exceeds $5 million.

It is well established that "[l]itigants have no right to free legal aid in civil suits." *Fid. Nat'l Title Ins. Co. of N.Y. v. Intercounty Nat'l Title Ins. Co.*, 310 F.3d 537, 540 (7th Cir.2002); *see also A Sealed Case*, 890 F.2d 15, 18 (7th Cir.1989) ("Parties in civil cases have no equivalent right to counsel at the expense of another— whether of the public or of an unwilling

---

1. Defendants New West/New Bluff include the following: Mid–City National Bank of Chicago as Successor Trustee to United of America Bank, Trustee under Trust Agreement Dated 5/9/1980 and known as Trust No. 1252; the Beneficiaries under Trust No. 1252; Burnham Management Company; Burnham Residential Venture I, Corp.; Burnham Residential I, L.P.; New West, an Illinois Limited Partnership; New Bluff, and Illinois Limited Partnership; Mid–City National Bank of Chicago, as Successor Trustee to United of America Bank, Trustee under Trust No. 1335; the Beneficiaries under Trust No. 1335; Burnham Residential Venture VII, L.P.; Burnham Residential Venture VII, Corp.; Ralph W. Gidwitz; and Ronald J. Gidwitz. The Defendants are for-profit entities and individual investors who, among other things, receive tax benefits related to their structure and enterprises.

2. Although New West/New Bluff anticipates U & H's continued representation through the conclusion of the "takings" phase of the trial, it has secured alternate representation for the purposes of opposing the instant motion as well as for the "valuation" phase, if any, of this action.

lawyer."). The American Bar Association's Model Rules of Professional Conduct, which have been adopted by this Court through Local Rule 83.50, provide:

> (b) Except as stated in paragraph (c), a lawyer may withdraw from representing a client if:
>
> . . .
>
> (5) the client fails substantially to fulfill an obligation to the lawyer regarding the lawyer's services and has been given reasonable warning that the lawyer will withdraw unless the obligation is fulfilled;
>
> (6) the representation will result in an unreasonable financial burden on the lawyer or has been rendered unreasonably difficult by the client; or
>
> (7) other good cause for withdrawal exists.

ABA Model Rule 1.16(b)(5)-(7).

■ Here, U & H argues that all three of the above sections of Model Rule 1.16(b) apply. First, U & H argues that its representation of New West/New Bluff has resulted, and will continue to "result in an unreasonable financial burden" on U & H, because New West/New Bluff has accrued over $5 million in unpaid attorney's fees—an amount that continues to increase as this litigation moves forward. ABA Model Rule 1.16(b)(6). In response, New West/New Bluff suggests that despite the amount of unpaid fees, it will not be overly burdensome for U & H to finish the trial because the remaining tasks "necessarily flow from work Ungaretti has already done in this trial, and Ungaretti has been uniquely prepared for these tasks by in fact trying this case to this point." Defs.' Resp. to Mot. to Withdraw ¶ 13. New West/New Bluff also notes that although it cannot, and will not, pay the outstanding $5 million in attorney's fees to U & H, it has already paid the U & H attorneys $7,225,064.75 in legal fees before the commencement of trial in 2012. The fact that a substantial amount of attorney's fees has already been paid, however, does not obviate New West/New Bluffs obligation to pay attorney's fees that have accrued and continue to accrue since the date of the last payment. In any event, the issue is whether $5 million in unpaid bills constitutes an "unreasonable financial burden" on U & H which would make withdrawal permissible. ABA Model Rule 1.16(b)(6). In *Fidelity National Title Insurance Company of New York,* the court stated that "[m]ore than $470,000 in unpaid bills, with the meter still running and poor prospects of future payment, is substantial by any reckoning" and that the district court's denial of the motion to withdraw was, therefore, an abuse of discretion. 310 F.3d at 540. Undoubtedly, even ten years later, $5 million in unpaid attorney's fees is a substantial amount which would cause U & H an unreasonable financial burden. Accordingly, Model Rule 1.16(b)(6) would permit withdrawal here.

■ Next, the U & H attorneys argue that they should be granted leave to withdraw pursuant to Model Rule 1.16(b)(5) because New West/New Bluff has failed to pay attorney's fees in accordance with the representation agreements and U & H has given New West/New Bluff reasonable notice that it would withdraw if payment is not made. The New West/New Bluff Defendants argue that they were given no notice of U & H's "desire to withdraw *prior* to concluding the takings phase." Defs.' Resp. to Mot. to Withdraw ¶ 3 (emphasis in original).

To the contrary, however, as U & H argues, New West/New Bluff has been on notice of U & H's intent to withdraw since at least September 24, 2013, when Defendant Ronald Gidwitz sent U & H a letter declining to pay "accrued or anticipated attorney fees for the litigation." Reply in Supp. of Mot. to Withdraw Ex. A. Approxi-

mately one month later, on November 20, 2013, U & H presented the New West/New Bluff Defendants with a proposed settlement of the delinquent fees, wherein U & H informed its clients that if payment is not made, U & H would seek to withdraw. On December 4, 2013, New West/New Bluff rejected the offer and refused to pay U & H's fees. Therefore, on December 18, 2013, U & H presented termination notices to all of the individuals and numerous entities that comprise the New West/New Bluff Defendants. Shortly thereafter, U & H filed the instant motion to withdraw on December 31, 2013. This series of events provided New West/New Bluff with ample notice of U & H's intent to withdraw so that the New West/New Bluff Defendants could secure new counsel, or alternatively, the individuals could file pro se appearances. The New West/New Bluff Defendants admit that they have failed to fulfill their payment obligation to U & H. Therefore, withdrawal pursuant to Model Rule 1.16(b)(5) is permissible.

■■ Lastly, U & H seeks leave to withdraw pursuant to Model Rule 1.16(b)(7) for "other good cause." ABA Model Rule 1.16(b)(7). Specifically, U & H seeks to withdraw based on recent conflicts which have arisen between U & H and the New West/New Bluff Defendants. First, U & H has been sued by Nancy Gidwitz in an unrelated matter. Nancy Gidwitz is a 1/8th owner of Defendant Burnham Management Company, a limited partner in both Defendant New West L.P. and Defendant New Bluff L.P. through her ownership and interests in other Gidwitz-entities, and sister to Defendant Ronald Gidwitz. U & H argues that "[t]he Firm should not be forced to continue to represent the Evergreen Terrace Parties while at the same time being sued by one of the owners of those clients." Reply in Supp. of Mot. to Withdraw, at p. 6. In addition, U & H alleges that New West/

New Bluff has recently threatened to bring a malpractice action against it, which places U & H in a position adverse to its clients, thereby constituting good cause to withdraw. In Illinois, a "withdrawal for good cause includes a withdrawal based on a breakdown in the attorney-client relationship, including a situation in which the client does not want to negotiate in the manner that the attorney thinks best." *Elusta v. City of Chi.*, 760 F.Supp.2d 792, 805 (N.D.Ill.2010) (citations omitted). Good cause has also been found in cases where there is "an irreconcilable breakdown in the attorney-client relationship or that continued representation will run afoul of [one's] ethical obligations as an attorney." *Barbee v. L. Fish Furniture Co.*, No. 05–CV–00550–JDT–TAB, 2006 WL 3201938, at *2 (S.D.Ind. May 4, 2006) (citing *A Sealed Case*, 890 F.2d at 18). New West/New Bluff's threat to bring a malpractice action against U & H, in addition to Nancy Gidwitz's lawsuit against U & H, demonstrates a breakdown in the attorney-client relationship between New West/New Bluff and U & H. Accordingly, U & H has demonstrated good cause to withdraw pursuant to Model Rule 1.16(b)(7).

■■ Despite the applicability sections (5) through (7) of ABA Model Rule 1.16, leave to withdraw may nevertheless be denied if a lawyer is engaged in "strategic conduct" or if there will be "severe prejudice to third parties." *Fid. Nat'l Title Ins. Co. of N.Y.*, 310 F.3d at 540–541. "[S]trategic behavior is waiting until the client is over a barrel and then springing a demand for payment (perhaps enhanced payment)." *Id.* at 540. New West/New Bluff alleges that U & H's attempt to withdraw after eight years of litigation and ninety-five days of trial, with only closing arguments and proposed findings of fact and conclusions of law remaining, constitutes

strategic conduct. U & H, on the other hand, states that this was not a last minute or strategic decision, but rather, U & H felt that it had an ethical obligation to continue to represent New West/New Bluff through the presentation of evidence, despite New West/New Bluff's refusal to pay. While the timing is not ideal, there is no indication that U & H's behavior is strategic or that any enhanced payment has been demanded.

It is uncontested that this has been a protracted litigation involving complex issues. Furthermore, the assembly of the proposed findings of fact and conclusions of law, as well as an effective closing argument, will be no small task in this case. However, U & H contends that forcing its attorneys to finish the trial—free of charge and with no hope of receiving payment for the $5 million in outstanding fees—is equally prejudicial, if not more so, to them. Additionally, although it may take some time for any new attorneys entering on behalf of the New West/New Bluff Defendants to become familiar with the proceedings, the task will be made easier in light of the fact that daily transcripts have been generated during the course of the trial. The Court is mindful of the parties' desire, as well as the Court's duty, to move this matter along in the interests of justice; however, to force unwilling attorneys to labor free of charge in a civil case where parties are not entitled to free representation is not in the interests of justice. As the Seventh Circuit stated in *A Sealed Case:*

> The only suggestion that the administration of justice nonetheless requires the firm's presence is the ... observation that withdrawal will leave [Defendants] unrepresented. If so, that consequence lies on [Defendants'] head[s]. Systemic interests are best served by remitting such litigants to their own devices rather than by forcing lawyers to put both their

reputations and their treasury at the disposal of reprobates.

*A Sealed Case,* 890 F.2d at 18. Accordingly, for the foregoing reasons, U & H's motion to withdraw is granted.

IT IS SO ORDERED.